UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
:
WILSON PAGAN, STEVEN LEWIS, YUSUF DIXON,       :
MICHAEL STEVENS, QUIANE WILLIAMS,              :
SANTIAGO GOMEZ, GUARIO VARGAS, GERALD          :         12 Civ. 7669 (PAE) (JCF)
CHARLES, CHRISTOPHER GLIVENS, WILLIAM P.       :
JENKINS, PEDRO LLERANDEZ, ADEM ARICI,          :         ORDER ADOPTING
JEROME BARNETT, JOSEPH DUSHOCK, and            :         REPORT &
ARMANDO SANCHEZ,                               :         RECOMMENDATION
                                               :
                        Plaintiffs,            :
                                               :
              -v-                              :
                                               :
WESTCHESTER COUNTY, KEVIN CHEVERKO,            :
ARAMARK CORRECTIONAL SERVICES LLC,             :
JOSEPH LOUGHRAN, and DONNA BLACKMAN,           :
                                               :
                        Defendants.            :
                                               :
------------------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

Several former inmates at Westchester County Jail (the "Jail"), proceeding *pro se*, bring this action against Westchester County (the "County"); Kevin Cheverko, the Commissioner of Westchester County Department of Corrections ("WCDOC");[1] Aramark Correctional Services LLC ("Aramark"); Joseph Loughran, the Director of Food Services for Aramark; and Donna Blackman, Aramark's Commissary Supervisor[2] (collectively, "Defendants"). Plaintiffs bring claims pursuant to 42 U.S.C. § 1983 for, *inter alia*, violations of their First and Eighth Amendment rights. Plaintiffs also bring claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961−68, and under New York state law. Plaintiffs

---

[1] The Court will refer to the County and Cheverko, collectively, as the "County Defendants."

[2] The Court will refer to Aramark, Loughran, and Blackman, collectively, as the "Aramark Defendants."

1

allege, *inter alia*, that they received undercooked or rotted meals on trays containing mold or bacteria in the Jail, and that, as a result of the substandard food provided by the Jail, they were forced to buy overpriced food from the Commissary and/or to change their designated religious affiliations in order to obtain proper meals.

On August 13, 2013, the County Defendants and the Aramark Defendants moved to dismiss the Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Before the Court is the February 3, 2014 Report and Recommendation of Magistrate Judge Sarah Netburn (the "Report"), recommending that the Court grant the motions in part and deny them in part. For the reasons that follow, the Court adopts the Report in full.

## I. Background[3]

### A. Facts

Wilson Pagan, Steven Lewis, Yusuf Dixon, Michael Stevens, Quiane Williams, Santiago Gomez, Guario Vargas, Gerald Charles, Christopher Glivens, William P. Jenkins, Pedro Llerandez, Adem Arici, Jerome Barnett, Joseph Dushock, and Armando Sanchez (collectively, "Plaintiffs"), are former inmates of the Jail. Each arrived at the Jail between May 13, 2010 and July 18, 2012, and has since been moved or released.

In 1996, Westchester County contracted with Aramark to provide food services at the Jail. Aramark was responsible for providing three meals a day to inmates, including Plaintiffs. On one or more occasions, Aramark served Plaintiffs undercooked or rotted meals, served on trays containing mold or bacteria. Specifically, Plaintiffs were served salads containing rotted

---

[3] The Court's summary of the facts of this case is drawn from the detailed account of the facts provided in the Report, to which the parties do not object. In considering the motions to dismiss, the Court, like Judge Netburn, accepts as true all facts alleged in the Second Amended Complaint.

lettuce, vegetables with insects on them, and undercooked meat.  As a result, Plaintiffs experienced severe stomach pains, nausea, vomiting, fever, headaches, diarrhea, weight loss, fatigue, dizziness, dehydration, and stretch marks.  Aramark also served Plaintiffs "small" or "minimal" portions of food.  Aramark was informed of these deficiencies, but failed to correct them.  Commissioner Cheverko, who holds daily staff meetings, including with Loughran and Blackman, was aware of the inmates' complaints regarding the food.

As part of its role in providing food services at the Jail, Aramark provided special meals for inmates with religious dietary restrictions, including, but not limited to, kosher meals for Jewish inmates and halal meals for Muslim inmates.  Plaintiffs Pagan and Lewis, both of whom are Catholic, switched their formal religious affiliation to Jewish in order to receive kosher meals, which they believed to be more sanitary.  As a result, they were no longer permitted to attend Catholic mass at the Jail.  Plaintiffs Dixon, Arici, Williams, Stevens, and Charles, who are Muslim, requested halal meals.  Dixon, Williams, and Stevens received halal meals that were undercooked, rotted, or otherwise unsanitary; when they complained, they were offered bologna and cheese sandwiches instead (although bologna does not conform to Muslim dietary law).  Dixon, as well as Charles, did not receive halal meals as often as Jewish inmates received kosher meals.  Initially, Arici was not served his meals on a religious meal tray; his request for a conforming meal and tray was not honored for approximately one week.  Once Arici began receiving the appropriate meal and tray, he became aware that an inmate worker was spitting in his halal food, from which he fell ill; thereafter, he switched to meals that did not conform to Muslim dietary restrictions.

Gomez and Arici both filed formal grievances regarding the food quality, to no avail.  Several other plaintiffs "attempted" to file grievances as well.  Pagan, Dixon, Lewis, Williams,

Stevens, Vargas, Charles, and Sanchez went to various individuals at the Jail, including correctional officers and Sergeants, all of whom refused to accept their grievances. In many instances, the inmates were told, erroneously, that food-related complaints were not "grievable issues," or that it was Aramark's problem, not the Jail's. Glivens, Llerandez, Barnett, Jenkins, and Dushock also failed to comply with formal WCDOC grievance procedures, but do not identify any specific thwarted attempts to file grievances. Plaintiffs indicate that there was a general atmosphere of hostility at the Jail aimed at prisoners who filed multiple grievances.

Aramark was also responsible for running the Commissary, from which inmates could purchase food and other items. A website (the "iCare site") was also created to allow friends and families to purchase items from the Commissary for inmates, for which they were charged a five-dollar shipping and handling fee (despite the fact that the items were not actually shipped anywhere). To supplement the rotten or otherwise inadequate meals provided to them by Aramark in the ordinary course, Plaintiffs bought food at the Commissary, purportedly at "jacked up prices." Plaintiffs' families would also purchase items from the Commissary for them via the iCare site. The revenues from the Commissary were shared by Aramark and Westchester County.

### B. Procedural History

On October 12, 2012, Plaintiffs, proceeding *pro se*, filed the Complaint. Dkt. 15. On February 4, 2013, Plaintiffs filed an Amended Complaint. Dkt. 26. On July 23, 2013, Plaintiffs filed a Second Amended Complaint. Dkt. 58. In the Second Amended Complaint, Plaintiffs allege, *inter alia*, that Defendants violated their Eighth Amendment rights in (1) providing them with substandard food, and failing to correct the problem once it was brought to their attention; (2) providing them with meals of insufficient size; and (3) forcing them to buy foods from the

Commissary at an inflated price to compensate for the inadequate meals.  Plaintiffs further allege that Defendants violated their First Amendment rights by forcing some inmates to change their designated religious affiliations in order to receive sanitary kosher meals, and depriving Muslim inmates with sanitary meals that conformed to their religious dietary restrictions.  Plaintiffs also bring RICO claims relating to Defendants' alleged price gouging in connection with goods sold in the Commissary, as well as claims under state law for Defendants' alleged violation of a settlement agreement reached with inmates who had brought similar claims in an earlier case.

On August 13, 2013, Defendants filed motions to dismiss pursuant to Rule 12(b)(6), Dkt. 61, 65, and supporting memoranda of law, Dkt. 63 ("Aramark Def. Br."), 71 ("County Def. Br.").  On August 27, 2013, the Court referred the case to Magistrate Judge Netburn for general pretrial supervision and for the preparation of a Report & Recommendation on the pending motions.  Dkt. 75.  On September 11, 2013, Gomez filed papers in opposition to the motions.  Dkt. 79, 80.  On October 8, 2013, the Aramark Defendants submitted a reply, Dkt. 82, and on October 9, 2013, the County Defendants did the same, Dkt. 84.

On February 3, 2014, Judge Netburn issued the Report, recommending that Defendants' motions to dismiss be granted in part and denied in part.  Dkt. 90.  Specifically, the Report recommended dismissing (1) the claims raised by Plaintiffs Glivens, Llerandez, Barnett, Jenkins, and Dushock in their entirety for failure to exhaust their administrative remedies, as required by the Prison Litigation Reform Act ("PLRA"); (2) the claims against Defendant Blackman in their entirety for failing to allege personal involvement; (3) the Eighth Amendment claims to the extent they related to food portions and high commissary prices; (4) the RICO claims in their entirety; and (5) the state law claims in their entirety, on the ground that violation of a settlement agreement is not a cognizable claim.  In all other respects, the Report recommended that

Defendants' motions to dismiss be denied.  Judge Netburn determined that Gomez and Arici had exhausted their administrative remedies; that Pagan, Dixon, Lewis, Williams, Stevens, Vargas, Charles, and Sanchez had fairly alleged that their failure to exhaust is excused under the PLRA; that plaintiffs fairly pled Eighth Amendment violations with respect to the allegation of undercooked or otherwise unsanitary meals; and that Pagan, Lewis, Dixon, Williams, Stevens, and Arici stated cognizable First Amendment claims.

On February 24, 2014, the Aramark Defendants and the County Defendants both filed objections to the Report. Dkt. 93 ("Aramark Obj."), 94 ("County Obj.").  On March 6, 2014, Gomez filed an affidavit in opposition to defendants' objections.  Dkt. 95.

## II.   Discussion

### A.   Standard of Review

In reviewing a Report and Recommendation, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(C).  When specific objections are made, "[t]he district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to."  Fed. R. Civ. P. 72(b)(3); *United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997).  However, when the objections simply reiterate previous arguments or make only conclusory statements, the Court should review the report for clear error.  *See Genao v. United States*, No. 08 Civ. 9313 (RO), 2011 WL 924202, at *1 (S.D.N.Y. Mar. 16, 2011); *Kirk v. Burge*, 646 F. Supp. 2d 534, 539 (S.D.N.Y. 2009) (collecting cases).

### B.   Objections to the Report

Defendants raise several objections to the Report.  The Court will address each in turn.

As a threshold matter, the County Defendants argue that all plaintiffs, save Gomez, failed to respond to the motion to dismiss, and thus should be treated as having abandoned their claims. County Obj. 3−4.  However, neither the County Defendants nor the Aramark Defendants raised this issue before Judge Netburn.  Thus, the Court declines to consider it here.  *See Grant v. Bradt*, No. 10 Civ. 394 (RJS), 2012 WL 3764548, at *4 (S.D.N.Y. Aug. 30, 2012) ("Generally, courts do not consider new arguments and new evidence raised in objections to a magistrate judge's report and recommendation that were not raised, and thus were not considered, by the magistrate judge.") (internal quotation marks and citation omitted); *Robinson v. Keane*, No. 92 Civ. 6090 (CSH), 1999 WL 459811, at *4 (S.D.N.Y. June 29, 1999) ("These issues were not raised before the Magistrate Judge and therefore were not addressed by him; accordingly, they may not properly be deemed 'objections' to any finding or recommendation made in the Report and Recommendation. . . .  An objecting party may not raise new arguments that were not made before the Magistrate Judge.").

The Aramark Defendants and the County Defendants raise several other objections to recommendations made in the Report, which substantially overlap.  First, they argue that Pagan, Lewis, Dixon, Stevens, Williams, Vargas, Charles, and Sanchez do not plausibly allege that they followed WCDOC's formal grievance procedures, or that such procedures were unavailable to them; thus, Defendants argue, they are not excused from the PLRA's exhaustion requirement. *See* Aramark Obj. 1−4; County Obj. 4−8.  This objection, however, merely restates identical arguments made before Judge Netburn.  *See* Aramark Def. Br. 6−7; County Def. Br. 7−11.  The Report considered these arguments, and concluded that the allegations in the Second Amended Complaint were sufficient to plead an excuse for failure to exhaust, citing several cases where

7

similar allegations (*i.e.*, that plaintiffs were thwarted in their attempts to file grievances) were deemed sufficient.  *See* Report 16−17.  The Court finds no clear error in this conclusion.

Defendants next object that the Second Amended Complaint fails to plausibly allege violations of the Eighth or First Amendments.  Specifically, they argue that (1) unsubstantiated allegations of undercooked food or unsanitary meal trays do not satisfy the standard for cruel and unusual punishment (*i.e.*, plaintiffs fail to allege the objective component of an Eighth Amendment claim); (2) Jail officials investigated plaintiffs' complaints, and thus Defendants could not have acted with deliberate indifference (*i.e.*, plaintiffs fail to allege the subjective component of an Eighth Amendment claim), *see* Aramark Obj. 4−8; County Obj. 9−14; and (3) allegations of being forced to choose between receiving kosher meals and attending the religious service of one's choice cannot substantiate a First Amendment claim, *see* Aramark Obj. 8−12; County Obj. 14−17.  Defendants further object to the Report's conclusion that the Second Amended Complaint plausibly alleges the personal involvement of the individual defendants in these constitutional violations.  *See* Aramark Obj. 12−14; County Obj. 17−18.  These objections too are duplicative of arguments previously raised and addressed.  *See* Aramark Def. Br. 13−19; County Def. Br. 11−13, 16−17.  Indeed, the Report considered each of these arguments in great detail, and determined that the *pro se* plaintiffs had alleged sufficient facts to survive a motion to dismiss.  *See* Report 21−24 (objective component of Eighth Amendment violation); *id.* at 24−25 (subjective component of Eighth Amendment violation); *id.* at 26−28 (First Amendment violation); *id.* at 29−32 (personal involvement of individual defendants).  The Court reviews this conclusion for clear error, and finds none.

Separately, the Aramark Defendants object to the Report's conclusion that the Second Amended Complaint states a § 1983 claim, arguing that Aramark was not acting under color of

state law, and that plaintiffs fail to plausibly allege a policy or practice sufficient to establish a *Monell* claim. Aramark made identical arguments to Judge Netburn. *See* Aramark Br. 8–12, 19–20. The Report persuasively explains that the County has a duty to provide food to inmates at the Jail and contracted with Aramark to fulfill this duty, and thus Aramark is serving a public function by providing food services to inmates at the Jail. *See* Report 34–35. The Report cites several cases supporting this understanding. *See id.* at 36. The Report also explains that the Second Amended Complaint's allegations of failure to train and failure to supervise suffice to plead a policy or practice for purposes of a § 1983 claim. *See id.* at 38–39. This analysis is thorough and well-reasoned. The Court finds no error, let alone clear error, in the Report's conclusions.

## CONCLUSION

For the foregoing reasons, the Court adopts the Report in full. The Clerk is directed to terminate the motions pending at Dkt. 61 and Dkt. 65. The case is referred back to Magistrate Judge Netburn for further proceedings.

SO ORDERED.

*Paul A. Engelmayer*
Paul A. Engelmayer
United States District Judge

Dated: March 12, 2014
New York, New York